UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

:

AMERICAN EUROPEAN INSURANCE COMPANY,       :

Plaintiff,       :

:

-v-       :

:

EIRE CONCRETE INC., RLF II BASSET, LLC, ARA       :
CONSTRUCTION CORP., AMAZON.COM       :
SERVICES, LLC, NU-WAY HEATING & COOLING,       :
INC., and JOSE VILLEGAS,       :

:

Defendants.       :

:

----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/22/2025

23-cv-3918 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff American European Insurance Company ("AEIC" or "Plaintiff") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 against appearing defendants ARA Construction Corp. ("ARA"), Eire Concrete Inc. ("Eire"), and Jose Villegas ("Villegas" or "Claimant") and for default judgment pursuant to Federal Rule of Civil Procedure 55 against non-appearing defendants RLF II Bassett, LLC ('RLF II Bassett"), Amazon.com Services, LLC ("Amazon.com") and Nu-Way Heating & Cooling, Inc. ("Nu-Way"). Dkt. No. 65. Plaintiff seeks a declaration that certain insurance policies issued by Plaintiff to Eire do not afford coverage to Defendants in an underlying action filed by Villegas in New York state court. *Id.* Eire cross-moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. Dkt. No. 72.

For the reasons that follow, Plaintiff's motion for summary judgment and default judgment is granted, and Eire's cross-motion for summary judgment is denied.

## BACKGROUND

The following facts are undisputed for purposes of this motion unless otherwise

indicated.  The Court construes the facts in favor of the non-moving party.

### I.    The Policies

AEIC is the insurer on two insurance policies issued to Eire: policy number SKP

0001825 19 (the "Policy") and policy number CUP 0006471 15 (the "Umbrella Policy" and with

the Policy, the "Policies").  Dkt. No. 66 ¶¶ 1–2.  Both cover the policy period of February 7,

2020, through February 7, 2021.  *Id.*  Pursuant to the Policy, AEIC is obligated to "pay those

sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . .

to which this insurance applies," up to the specified policy limit.  *Id.* ¶ 3; Dkt. No. 66-1 at 8.[1]

Pursuant to the Umbrella Policy, AEIC is obligated to "pay on behalf of the insured the 'ultimate

net loss' in excess of the 'retained limit' because of 'bodily injury' . . . to which this insurance

applies."  Dkt. No. 66 ¶ 4; Dkt. No. 66-2 at 5.

### A.    Additional Insureds

Section II of the Policy, titled "Who Is An Insured," specifies the individuals or

organizations which qualify as insureds under the Policy.  Dkt. No. 66-1 at 16–17.  The Policy

includes an endorsement titled "**ADDITIONAL INSURED – OWNERS, LESSEES OR**

**CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION**

**AGREEMENT WITH YOU**."  *Id.* at 29.  The endorsement states:

> Section II – Who Is An Insured is amended to include as an additional insured any
> person or organization for whom you are performing operations when you and such
> person or organization have agreed in writing in a contract or agreement that such
> person or organization be added as an additional insured on your policy.  Such
> person or organization is an additional insured only with respect to liability for

---

[1] All citations to summary judgment exhibits, Dkt. Nos. 66-1 through 66-33, use ECF pagination.

"bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

> 1. Your acts or omissions; or

> 2. The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured;

However, the insurance afforded to such additional insured:

> 1. Only applies to the extent permitted by law; and

> 2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

*Id.*; Dkt. No. 66 ¶ 7.

The Policy also contains a separate endorsement titled "**ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS-COMPLETED OPERATIONS AUTOMATIC STATUS WHEN REQUIRED IN A WRITTEN CONTRACT WITH YOU**." Dkt. No. 66 ¶ 8. That endorsement is similar to the previous endorsement, except that instead of stating that a person is an additional insured when "you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured," it states that an additional insured is included when "you and such person or organization have agreed in a 'written contract' that such person or organization be added as an additional insured on your policy." Dkt. No. 66-1 at 66–67; Dkt. No. 66 ¶ 8. It then defines "written contract" as:

> [T]hat part of any written contract under which you are required to include a person or organization as an additional insured, provided that the "bodily injury", "property damage", or "personal and advertising injury" occurs:

> > 1. After the signing and execution of the written contract by you;

> > 2. While that part of the written contract is in effect; and

3. Before the end of the policy period.

Dkt. No. 66-1 at 66–67.

The Umbrella Policy states that: "[a]ny additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance" and "[a]dditional insurance coverage provided by this insurance will not be broader than coverage provided by the 'underlying insurance.'" Dkt. No. 66 ¶ 9; Dkt. No. 66-2 at 12–13. The underlying insurance to the Umbrella Policy is the Policy. Dkt. No. 66-2 at 3.

### B.  Employee Exclusion

The Policies contain similar exclusions for Injury to Employees, Contractors and Employees of Contractors. The Policy contains an exclusion titled "**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**" (the "Employee Exclusion") by an endorsement which provides:

Exclusion 2.e Employers Liability is deleted and replaced by the following:

2.e Employers Liability

This insurance does not apply to:

(1) "Bodily injury" to any "employee" of any insured arising out of or in the course of:

    a. Employment by any insured; or

    b. Performing duties related to the conduct of any insured's business;

(2) "Bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever;

(3) Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury" to an insured's employee or any contractor or any contractor's employee; . . . .

Dkt. No. 66 ¶ 5; Dkt. No. 66-1 at 60.

The Umbrella Policy contains an exclusion titled: "**EXCLUSION OF INJURY EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**" by an endorsement which provides:

This insurance does not apply to:

I.    "Bodily injury" to any "employee" of any insured arising out of or in the course of:

    a.  Employment by any insured;

    b.  Performing duties related to the conduct of any insured's business

II.   "Bodily injury" to any contractor or any "employee" of any contractor arising out or in the course of rendering or performing services of any kind or nature whatsoever by such contractor or "employee" of such contractor for which any insured may become liable in any capacity; or;

III.  Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury"; . . . .

Dkt. No. 66 ¶ 6; Dkt. No. 66-2 at 49.

The Policies also contain a "Separation of Insureds" clause. Both Policies states as follows:

7.  **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured, and

b.  Separately to each insured against whom claim is made or "suit" is brought.

Dkt. No. 66-1 at 20; Dkt. No. 66-2 at 15.[2]

## II.    Contracts with ARA

ARA was the general contractor on a project to build an Amazon warehouse on Bassett Avenue in the Bronx (the "Project"). Dkt. No. 66 ¶¶ 16, 23, 56, 60. Eire signed a Subcontract

---

[2] The Separation of Insureds clause is Section 8 in the Umbrella Policy. Dkt. No. 66-2 at 15.

Agreement with ARA to perform concrete work on the Project. *Id.* ¶¶ 18, 37–38, 57, 68; Dkt.

Nos. 66-19, 66-20.  The Subcontract Agreement contained the following insurance provision:

> **22. INSURANCE**
>
> Prior to commencing Work, Subcontractor shall procure and maintain, at its own expense, until one year elapses from the date of final completion, insurance coverage in a type, form and amounts acceptable to ARA, and from insurers acceptable to ARA. ARA and Owner shall be named as additional insured on each insurance policy except for Workmen's Compensation. The Workmen's Compensation policy shall be in accordance with the statutory requirements, plus Employers Liability Insurance in an amount not less than $1,000,000.00 and shall provide for a waiver of subrogation rights against ARA and Owner. Subcontractor shall provide to ARA copies of all such insurance policies, and in addition a certificate from each insurance carrier stating that the policy will not be altered, cancelled, or permitted to expire without first giving thirty (30) days prior written notice thereof to ARA. Refer to Exhibit I for complete insurance requirements and stipulations.

Dkt. No. 66 ¶ 38; Dkt. No. 66-19 at 8.  Eire and ARA agree that this contract required Eire to

name ARA as an additional insured.  Dkt. No. 75 ¶ 53, Dkt. No. 79 ¶ 53; Dkt. No. 74 ¶¶ 13–14;

Dkt. No. 74-1 (certificate of liability insurance describing ARA as an additional insured on the

Policy "as required by ARA's contract").

ARA also contracted with Nu-Way for Nu-Way to perform HVAC work on the Project.

Dkt. No. 66-11.

## III.    The Underlying Action

Villegas was employed by Nu-Way.  Dkt. No. 66 ¶ 17.  He was working for Nu-Way

installing HVAC components at the Project site in January 2021 when he fell and sustained

injuries.  *Id.* ¶¶ 17, 22, 40–41.

On or about December 14, 2021, Villegas sued RLF II Bassett, ARA, and Amazon.com

Services, LLC in New York State Supreme Court, Bronx County.  Dkt. No. 66-9.  He alleged

that ARA was the general contractor for the Project, that ARA hired Nu-Way,[3] and that he was an employee of Nu-Way working on the Project. *Id.* ¶¶ 40–49.  He alleged that while he was working, he fell over "some incomplete dried cement and/or construction material or debris by reason of the negligence of the Defendants" and their agents and employees. *Id.* ¶ 53.  He brought claims of negligence and of violations of Sections 200, 240, and 241(6) of the New York Labor Law. *Id.* ¶¶ 53–73.

On or about February 28, 2022, RLF II Bassett and ARA commenced a third-party action against Nu-Way, alleging that Villegas' injuries were due to the negligence of Nu-Way and seeking contribution, apportionment, and indemnification from and against Nu-Way for all or any part of a verdict of judgment that Plaintiff could recover against the third-party plaintiffs. Dkt. No. 66-17.  On or about August 22, 2022, ARA and RLF II Bassett commenced a second third-party action against Nu-Way and Eire, alleging that Villegas was injured due to work performed by Eire at the premises and seeking indemnification from Eire with respect to any liability ARA and RLF II Bassett incurred to Villegas.  Dkt. No. 66-13.

## IV.    The Tender and Disclaimer

On or around August 2, 2022, Eire sent AEIC a General Liability Notice of Occurrence/Claim regarding the Villegas claim. Dkt. No. 66-3 at 1.[4]  Eire also sent a letter from its insurer, CNA, tendering the claim, and a copy of the lawsuit, *Jose Villegas v. RLF II Bassett, LLC, Ara Construction Corp. and Amazon.com Services, LLC*, filed in the Supreme Court of the State of New York, Bronx County.  Dkt. No. 66-3.  The tender letter sought defense,

---

[3] Nu-Way is referred to in Villegas' complaint as "New Way Heating and Cooling Inc."  Dkt. No. 66-9 ¶¶ 47–49.

[4] AEIC states that it received notice of the claim on this date via "tender sent by CNA."  Dkt. No. 66 ¶ 13.  The exhibit it cites contains an email sent by Raymond Sheridan Financial, Eire's insurance broker, stating that it attaches documents from CNA.  Dkt. No. 66-3 at 2.  Whether the tender was technically sent by Eire or CNA is not material to this motion.

indemnification, and additional insured coverage on behalf of ARA, RLF II Bassett, and Amazon.com.  *Id.* at 3.

AEIC sent a letter to Eire on August 2, 2022, acknowledging receipt of the claim.  Dkt. No. 66 ¶ 25; Dkt. No. 66-4.  On August 3, 2022, AEIC sent a letter to CNA acknowledging receipt of the request for defense, indemnification and additional insured coverage.  Dkt. No. 66 ¶ 26; Dkt. No. 66-5.[5]

On September 21, 2022, AEIC issued a letter to Eire disclaiming coverage under the Policies.  Dkt. No. 66 ¶ 39; Dkt. No. 66-21.  Among other things, the disclaimer letter stated: "To the extent that the additional insureds under the Policies contracted with the employer of Nu-Way, each of the provisions of the above-quoted '**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**' in the Policies apply to bar coverage to all, including additional insureds, as to all claims set forth or which may be alleged as part of or arise from the Villegas Claim."  Dkt. No. 66-21 at 8–9.

On or around February 7, 2023, Villegas amended his complaint to name Eire as a direct defendant.  Dkt. No. 66 ¶ 40.  Villegas alleged that the area in which the accident took place was under the control and supervision of Eire, and that Eire created the condition which caused Plaintiff's accident or might be statutorily responsible under the New York Labor Law.  Dkt. No. 66-22 ¶ 5.

---

[5] AEIC's Rule 56.1 statement contains significant additional detail regarding the investigation of the claim and Villegas's testimony in the underlying action, some of which is disputed.  *See* Dkt. No. 75 ¶¶ 28–31, 65–70.  Because Defendants have not challenged the timeliness of AEIC's disclaimer or any issues related to Villegas's testimony, none of these facts are material to decision of this motion.

## PROCEDURAL HISTORY

AEIC initiated this case by complaint filed on May 10, 2023, seeking a declaratory judgment that it has no duty to defend or indemnify any party or to pay any judgments or settlements as to the claims asserted or which might be asserted in the Villegas action and that all other insurance is primary to the insurance issued by AEIC. Dkt. No. 1. Villegas answered the complaint on July 17, 2023. Dkt. No. 32. Eire filed an answer on August 1, 2023, which included a counterclaim seeking a declaration that AEIC's disclaimer of coverage was wrongful and AEIC is obligated to continue to defend and indemnify Eire. Dkt. No. 34.

On August 31, 2023, Plaintiff filed proposed certificates of default against RLF II Basset, ARA, Amazon.com, and Nu-Way, and clerk's certificates of default were issued that same day. Dkt. Nos. 40–42. ARA then appeared on December 8, 2023, and filed an answer on December 20, 2023. Dkt. Nos. 48, 54. RLF II Basset, Amazon.com, and Nu-Way were served but have never appeared in this action. Dkt. Nos. 24–26.

On May 24, 2024, AEIC filed a motion for summary judgment and default judgment along with a Rule 56.1 statement, a memorandum of law, a declaration of counsel, and an affidavit in support of the motion. Dkt. Nos. 65–66, 68, 70–71. On June 24, 2024, Eire filed a cross-motion for summary judgment supported by two declarations, a memorandum of law in opposition to AEIC's motion for summary judgment and in support of its own motion for summary judgment, a counterstatement to AEIC's Rule 56.1 statement, and a Rule 56.1 statement in support of its own motion. Dkt. Nos. 72–76. ARA filed a memorandum of law in opposition to AEIC's motion for summary judgment on June 24, 2024, along with a declaration in support of its opposition and a counterstatement to the Rule 56. 1 statement. Dkt. Nos. 77–79. On July 12, 2024, AEIC filed a memorandum of law in further support of its motion for summary judgment and in opposition to Eire's cross-motion for summary judgment, as well as a

response to Eire's Rule 56.1 statement.  Dkt. Nos. 80–81.  On August 2, 2024, Eire filed a reply in further support of its motion for summary judgment.  Dkt. No. 82.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  To defeat a motion for summary

judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). "Mere conjecture or surmise by the nonmovant in support of his or her case is inadequate." *Am. Home Assurance Co. v. Jamaica*, 418 F. Supp. 2d 537, 546 (S.D.N.Y. 2006).

## DISCUSSION

Plaintiff seeks summary judgment on the grounds that the Employee Exclusion endorsements in both policies bar coverage because the claims at issue pertain to an injury to an employee of a contractor of any insured. Dkt. No. 68 at 8–9. ARA is "any insured" because it is an additional insured, and Villegas is an employee of a contractor of ARA. *Id.* at 14. ARA argues that the Employee Exclusion does not apply because there is "no contractual privity or direct relationship between Eire and the claimant Villegas," nor did Eire contract with Nu-Way. Dkt. No. 78 at 1. Eire makes similar arguments. Dkt. No. 76 at 4, 7–10. Defendants argue that under the Separation of Insureds clauses of the Policies, the Employee Exclusion must be read to exclude coverage only for employees of the insured seeking coverage. Dkt. No. 78 at 8. They further argue that this reading comports with the purpose of the exclusion, which is to avoid overlap between general liability coverage and the worker's compensation system. *Id.*

## I.    Governing Law

"An insurance agreement is subject to principles of contract interpretation." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015)). "[W]here the terms of an insurance contract unambiguously bar a claim of coverage, including defense or

indemnification, that plain meaning will control, making summary judgment appropriate." *Netherlands Ins. Co. v. U.S. Underwriters Ins. Co.*, 2015 WL 9295745, at *3 (S.D.N.Y. Dec. 17, 2015).

"As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'" *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quoting *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)). "[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (quotation marks and citation omitted). "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements." *Id.* at 748. "In that regard, a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'" *Id.* (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536 (N.Y. 1996)).

"Under New York law, which governs this dispute, an insurer bears the burden of proving that an exclusion applies." *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). "In New York, '[t]he law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to the insureds.'" *Principal Life Ins. Co. v. Brand*, 2023 WL 8270721, at *3 (2d Cir. Nov. 30, 2023) (quoting *Beazley Ins. Co. v. ACE Am. Ins. Co.*, 880 F.3d 64, 68 (2d Cir. 2018)). "An insurer wishing to exclude coverage under its policy 'must do so in clear and unmistakable language,'" and "[a]ny such exclusions or

exceptions . . . must be specific and clear in order to be enforced." *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) (quoting *Beazley*, 880 F.3d at 69); *see Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.3d 302, 307 (N.Y. 2009); *New York v. Blank*, 27 F.3d 783, 788–89 (2d Cir. 1994). The Court's "first step in interpreting whether an insured's loss falls within a policy exclusion is to 'examine whether there is a 'reasonable basis for a difference of opinion as to the meaning of the policy.'" *7001 E. 71st St., LLC v. Cont'l Cas. Co.*, 739 F. App'x 37, 38–39 (2d Cir. 2018) (summary order) (quoting *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 150 (2d Cir. 2016)).

"The duty to defend an insured is not triggered . . . 'when the only possible interpretation of the allegations against the insured is that the factual predicate for the claim falls wholly within a policy exclusion.'" *Campoverde v. Fabian Builders, LLC*, 922 N.Y.S.2d 435, 437 (2d Dep't 2011) (quoting *Howard & Norman Baker, Ltd. v Am. Safety Cas. Ins. Co.*, 904 N.Y.S.2d 770, 772 (2d Dep't 2010)); *see U.S. Underwriters Ins. Co. v. 614 Constr. Corp.*, 142 F. Supp. 2d 491, 494 (S.D.N.Y. May 15, 2001). Here, the issue is whether the factual predicate for the claim unambiguously falls within the Employee Exclusion clause in the Policies. In addressing this state-law question, the Court must predict how the New York Court of Appeals would interpret the Employee Exclusion clause here. *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). "The decisions of New York State's Appellate Division are helpful indicators," which are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)).

The proper interpretation of Employee Exclusion clauses under New York law has been the subject of extensive discussion. *See, e.g., Buckingham Props., LLC v. Atl. Cas. Ins. Co.,*

13

2020 WL 95422, at *4–5 (W.D.N.Y. Jan. 8, 2020) ("A review of New York caselaw indicates

that this is a frequently-litigated issue."); *Merchants Mut. Ins. Co. v. Rutgers Cas. Ins. Co.,* 922

N.Y.S.2d 200 (2d Dep't 2011); *Shelby Realty LLC v. Nat'l Sur. Corp.*, 2007 WL 1180651, at *4

(S.D.N.Y. Apr. 11, 2007); *Nautilus Ins. Co. v. Barfield Realty Corp.*, 2012 WL 4889280, at *10

(S.D.N.Y. Oct. 16, 2012); *U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc.*, 797 F.3d 116,

122 (1st Cir. 2015).  The general function of an Employee Exclusion clause is to "preclude[e]

over-coverage (where an employer has both workman's compensation insurance and commercial

liability insurance for an employee's injury) by excluding claims stemming from an employee's

bodily injury sustained '*in the course of his employment*.'"  *Shelby Realty*, 2007 WL 1180651, at

*4.  Some courts have construed Employee Exclusion clauses narrowly so that they serve this

limited purpose without swallowing "losses to third parties arising out of the operation of the

insured's business," which are assumed to be within the intended coverage of a commercial

general liability policy.  *Benchmark*, 797 F.3d at 122 (quoting 9A Steven Plitt et al., *Couch on

Ins.* § 129:2 (3d ed. 2014)).  On the other hand, insurance contracts—just like any other

contract—must be interpreted to effectuate their plain meaning and to avoid rendering clauses or

contractual terms a nullity.  *See Nautilus Ins.*, 2012 WL 4889280, at *10.  Thus, when the

Employee Exclusion in a given contract unambiguously goes beyond claims that would be

covered by workers' compensation insurance, courts must give effect to the language of the

exclusion.  *See W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.,* 2022 WL 329225, at *12–13

(S.D.N.Y. Feb. 3, 2022) (noting that "[t]he Employer-Liability Exclusion is likely to extend

beyond claims where workers' compensation would apply," and rejecting arguments that the

purported purpose of such an exclusion could control over its express language).

This case involves the interplay between an Employee Exclusion provision and a Separation of Insureds provision in a policy with multiple insureds, an area of especially frequent litigation.  *See, e.g., Shelby Realty*, 2007 WL 1180651, at *4; *Nautilus Ins.*, 2012 WL 4889280, at *10; *DRK, LLC v. Burlington Ins. Co.*, 905 N.Y.S.2d 58 (1st Dep't 2010); *Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 46 F. Supp. 3d 398 (S.D.N.Y. 2014), *rev'd*, 630 F. App'x 6 (2d Cir. 2015) (summary order).  A Separation of Insureds provision states that the insurance applies "[s]eparately to each insured," Dkt. No. 66-1 at 20, and generally requires insurers to resolve coverage "as if the policy had been issued to the . . . insured alone," *Greaves v. Pub. Serv. Mut. Ins. Co.,* 155 N.E.2d 390, 392 (N.Y. 1959).  Separation of Insureds provisions became prevalent in the late 1950s to address an issue that had arisen in policies with multiple insureds, namely that "courts interpreted exclusions concerning "the insured" to preclude coverage for any insured."  *Nautilus Ins. Co. v. K. Smith Builders, Ltd*., 725 F. Supp. 2d 1219, 1229–30 (D. Haw. 2010).  Insurance companies had not intended this result, and inserted Separation of Insureds provisions "to clarify . . . that the term 'the insured' in an exclusion refers merely to the insured claiming coverage."  *State, Dep't of Transp. & Pub. Facilities v. Houston Cas. Co*., 797 P.2d 1200, 1205 (Alaska 1990) (Matthews, C.J., concurring).  In accordance with this aim, when an Employee Exclusion references employees of "the insured," "courts consistently apply the Separation of Insureds provision to mean that the phrase 'the insured' refers to the party seeking coverage."  *Reidy Contracting Grp., LLC v. Mt. Hawley Ins. Co.*, 683 F. Supp. 3d 290, 300 (W.D.N.Y. 2023); *see Emps. Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 62 (2d Cir. 2018) (summary order), *Endurance*, 630 F. App'x at 8.  An insured is not covered for claims by its own employees, but may be covered for claims by employees of other insureds.

But a different result follows when, as here, the Employee Exclusion excludes coverage for claims by employees of "any insured," rather than "the insured."  *See Reidy*, 683 F. Supp. 3d at 298.  The plain language of an "any insured" provision "unambiguously excludes coverage even where the injured party was an employee of another insured under the policy."  *DRK*, 905 N.Y.S.2d at 59.  Although an insured may "contend that the 'separation of insureds' provision limits the application of the employer liability exclusion" to employees of the insured seeking coverage, "[c]ourts applying New York law have generally rejected this interpretation."  *Reidy*, 683 F. Supp. 3d at 298 (collecting cases).  "To hold that the term 'any insured' in an exclusion means 'the insured making the claim' would collapse the distinction between the terms 'the insured' and 'any insured' in an insurance policy exclusion clause, making the distinction meaningless."  *Evanston Ins. Co. v. OEA, Inc*., 2005 WL 1828796 (E.D. Cal. July 25, 2005) (citation omitted), *aff'd*, 566 F.3d 915 (9th Cir. 2009).  Thus, "where . . . the language of the exclusion refers to 'any insured' it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity."  *Nautilus Ins.*, 2012 WL 4889280, at *10; *see Endurance*, 630 F. App'x at 8.  The use of the language "any insured" rather than "the insured" reflects a choice not to limit the exclusion to employees of the insured seeking coverage, but rather to draw a line between employees of insureds and other unaffiliated persons.

Thus, the "consensus" under New York law is that "where exclusionary endorsements refer to 'the insured,' rather than 'any insured,' the separation of insureds language does indeed control, as the clauses may be read together in harmony," but where "the language of the exclusion refers to 'any insured' it should be read to supersede the separation of insureds language" and exclude coverage sought by any insured for injuries suffered by employees of any

other insured.  *Endurance*, 46 F. Supp. 3d at 417 (quoting *Nautilus Ins.*, 2012 WL 4889280, at *10).[6]

## II.    Application to the Policy

The Policies here are "any insured" policies.  The Policy excludes:

(1) "Bodily injury" to any "employee" of any insured arising out of or in the course of:

>   a. Employment by any insured; or

>   b. Performing duties related to the conduct of any insured's business;

(2) "Bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever;

(3) Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury" to an insured's employee or any contractor or any contractor's employee; . . . .

Dkt. No. 66 ¶ 5.  The Umbrella Policy similarly excludes:

>   I.    "Bodily injury" to any "employee" of any insured arising out of or in the course of:
>
>   a.    Employment by any insured;
>
>   b.    Performing duties related to the conduct of any insured's business
>
>   II.   "Bodily injury" to any contractor or any "employee" of any contractor arising out or in the course of rendering or performing services of any kind or nature whatsoever by such contractor or "employee" of such contractor for which any insured may become liable in any capacity; or;
>
>   III.  Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury";

Dkt. No. 66 ¶ 6.

---

[6] Two federal cases in this circuit initially took the opposite approach, holding that provisions applicable to "any insured" were limited by the separation of insureds provision to the insured seeking coverage.  *Shelby Realty*, 2007 WL 1180651, at *4; *Ostrowski v. Am. Safety Indem. Co.*, 2010 WL 3924679, at *6 (E.D.N.Y. Sept. 30, 2010).  However, these cases have not been followed.  *See Reidy*, 683 F. Supp. 3d at 298 n.3.

These exclusions are not limited to "the insured," but preclude coverage for injury suffered by employees of "any insured," as well as contractors and employees of contractors. This is therefore the type of exclusion that New York courts have found "unambiguously excludes coverage even where the injured party was an employee of another insured under the policy." *DRK*, 905 N.Y.S.2d at 59. It is undisputed that both Eire and ARA were insureds under the Policies. Eire is the named insured, and ARA is an additional insured by virtue of its contract with Eire which requires it to be named as an additional insured. Dkt. No. 66-1 at 29; Dkt. No. 75 ¶ 53, Dkt. No. 79 ¶ 53; Dkt. No. 74-1.[7] The Policies therefore unambiguously exclude coverage for Eire for injuries suffered by employees of ARA, and vice versa. *See Barba v. Allianz Glob. Risks US Ins. Co.*, 2016 WL 6236324, at *8 (S.D.N.Y. Oct. 25, 2016) ("[T]he application of the exclusion to either insured precludes coverage under the Policy for the other.").

The claimant here, Villegas, is not a direct employee of ARA but rather an employee of a contractor, Nu-Way. However, this situation is specifically contemplated by subsection (2),

---

[7] Eire's reply brief seems to contest ARA's additional insured status, stating that "although ARA and the owner may be potentially entitled to Additional Insured status pursuant to the GL Policy endorsements the additional prerequisite to that status would be to establish wrongful or negligent action on the part of Eire, the Named Insured." Dkt. No. 84 at 4. This assertion is unsupported by any evidence and appears to conflate additional insured status with coverage for a particular claim. The additional insured provision in the Policy states that an additional insured includes "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." Dkt. No. 66-1 at 29. There is no dispute that Eire was performing work for ARA and that their written contract required ARA to be added as an additional insured on the Policy. Eire's President submitted a declaration stating that the contract included "a requirement that Eire name as additional insured ARA" and that he actually sought such additional insured coverage, and he supported this with a certificate of insurance listing ARA as an additional insured. Dkt. No. 74 ¶¶ 13–14; Dkt. No. 74-1. There is no requirement that Eire must act negligently or wrongfully before it may add an additional insured to the Policy.

which expands the exclusion from "employees" to "any contractor or any 'employee' of any contractor." Dkt. No. 66 ¶ 5.  Although subsection (2) of the Policy does not restate the words "any insured,"[8] the only reasonable interpretation is that it applies to contractors of any insured, rather than only of the named insured or the insured seeking coverage.  The text of subsection (2) itself does not suggest a narrowing of the employee provision which precedes it; on the contrary, the provision on its face is even broader than subsection (1).  The provision excludes injury to "any contractor or any 'employee' of any contractor arising out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever." Dkt. No. 66 ¶ 5.  If anything, this language seems to sweep in not only contractors of "any insured," but also contractors totally unaffiliated with any insured who happen to be performing services in the area.  Although such a reading would be unreasonably broad, *see U.S. Liab. Ins. Co. v. WW Trading Co.*, 2018 WL 6344641, at *14 (E.D.N.Y. Sept. 28, 2018), *aff'd*, 813 F. App'x 636 (2d. Cir 2020), the expansive language is not susceptible of a narrowing construction applying it only to specific insureds.  Rather, the natural reading is that the use of "any insured" in the previous subsection also applies to subsection (2).

This reading is confirmed by the surrounding language and contractual context.  The employer's liability provision in the original policy excluded only injury to employees of "the insured," and did not exclude injury to contractors.  Dkt. No. 66-1 at 9.  The endorsement specifically changed the language to reference employees of "any insured." *Id.* at 60.  It also added the language regarding contractors and their employees, which "does not have a direct counterpart in the original "Employer's Liability" exclusion but . . . is reasonably interpreted as

---

[8] The same subsection of the Umbrella Policy adds the words "for which any insured may become liable in any capacity." Dkt. No. 66 ¶ 6.  If anything, this strengthens the reading that the exclusion should apply to the contractors of any insured under the Umbrella Policy.

an extension of the Endorsement's first provision" to "respond[] to a situation, common in [a construction contractor's] line of work, in which there may be several layers of subcontractors between any given worker and the general contractor."  *Benchmark*, 797 F.3d at 122–23 (interpreting a similar endorsement).  In other words, subsection (2) is intended to simply recognize that in this context the insured may use contractors and subcontractors instead of employees, and the exclusion should apply to these people in the same way it applies to employees.

Other parts of the contract similarly reference the contractor provision as an analogue to the employee provision rather than a disjunct requirement applicable to different insureds.  The title of the endorsement and the disclosure notice which precedes the policy both speak of an exclusion for "injury to employees, contractors and employees of contractors" in an undifferentiated manner.  Dkt. No. 66-1 at 7, 60.  Similarly, subsection (3) of the endorsement excludes any obligation to "indemnify or contribute with another because of . . . [injury] to an insured's employee or any contractor or any contractor's employee," referencing the three categories of worker as if they are interchangeable for coverage purposes.  *Id.* at 60.  Any reasonable insured reading the policy would expect the exclusion to apply to employers, contractors, and contractor's employees of any insured.  *See Netherlands Ins.*, 2015 WL 929574, at *6 (reaching the same conclusion with a nearly identical policy).

Defendants' primary argument to the contrary is that the subcontractor exclusion cannot apply unless the insured and the subcontractor are in privity.  Dkt. No. 78 at 1; Dkt. No. 76 at 4, 7–10.  Because Eire is not in privity with Villegas or Nu-Way, the exclusion cannot apply to Eire's coverage for injuries to Villegas.  However, Defendants' privity argument is based on a misreading of the case law.

Defendants are correct that several courts have interpreted similar or identical contractor exclusions to require privity between contractor and insured for the exclusion to apply. *See U.S. Underwriters Ins. Co. v. Kenfa Madison, LLC*, 2023 WL 2710879, at *7 (E.D.N.Y. Mar. 30, 2023), *reconsideration denied*, 2023 WL 5617772 (E.D.N.Y. Aug. 30, 2023); *Merchants Mut. Ins. Co. v. Rutgers Cas. Ins. Co*., 2011 WL 1004467, at *2–3 (N.Y. Sup. Ct. 2010) ("[G]iven the plain meaning of the exclusion, its purpose is to relieve the insurer of liability for a claim arising out of bodily injury to an employee of a contractor in privity with the insured."), *aff'd*, 922 N.Y.S. 200; *WW Trading*, 813 F. App'x at 640–41.  However, these cases provide no guidance regarding *which* of multiple insureds needs to be in privity, which is the issue presented here. Rather, the cases involved insurers' attempts to deny coverage for injury to persons who were "contractors" in the sense that they were party to some sort of contract to work on a related project, but had no contract with *any* insured.  Therefore, the courts held that it would be unreasonable to "exclude coverage for individuals injured by [the insured] based solely on whether they are an employee or contractor of a random, third party." *WW Trading*, 2018 WL 6344641, at *14.  Courts construed the exclusion instead to require privity with an insured.

Here, Nu-Way is not a contractor of a "random, third party." *Id.*  It is a contractor of an insured, ARA.  The issue is whether Nu-Way needs to be in privity with "the insured" seeking coverage, Eire, or the exclusion applies merely because Nu-Way is in privity with "any insured." *Id.*  This issue is not resolved, or even presented, by the cases on which Defendants rely.  Rather, it is addressed by the extensive case law already reviewed discussing the distinct meanings of "the insured" and "any insured."

Defendants overread language from such cases stating that the "exception applies only to bodily injuries sustained by contractors who are in privity with the insured," as a holding that

privity must exist with "the insured" seeking coverage, rather than with any insured. *Id.* But this language cannot bear the weight Defendants place on it. It would have been unusual for the courts to refer to the only insured in such a case as anything but "the insured." By doing so, the courts cannot be understood to have overruled the established law regarding the interpretation of contracts with multiple insureds, smuggling back in the practice of rewriting contracts applicable to "any insured" as applicable only to "the insured." Rather, the cases requiring privity should be read in harmony with the established body of law differentiating between "the insured" and "any insured." There is no conflict in stating both that privity is required and that the policy language of "the insured" or "any insured" determines which insured must be in privity. When, as here, an exclusion applies to contractors of "any insured," privity with any insured is sufficient.

Defendants may well be correct that reading the exclusion to apply to "the insured" rather than any insured would be more in line with the traditional purpose of the exclusion and the purpose of the parties in procuring coverage. *See Shelby Realty*, 2007 WL 1180651, at *4. However, the Court may not rewrite the contract to align with these purported purposes, "creating a new contract under the guise of interpreting the parties' own agreements." *Nomura*, 92 N.E.3d at 748. The distinction between exclusions applying to "the insured" and "any insured" is well-recognized, and the parties here chose the broader "any insured" language. For the Court to require privity between the contractor and "the insured" seeking coverage would render this choice "meaningless or without force or effect." *Id.*; *see Nautilus Ins.*, 2012 WL 4889280, at *10.

Thus, Plaintiff is entitled to summary judgment. The Employee Exclusion here unambiguously covers employees and contractors of "any insured," rather than only the insured

seeking coverage.  It is undisputed here that Villegas was an employee of a contractor of one of

the insureds, because ARA was an additional insured and Villegas worked for Nu-Way, a

contractor of ARA.  It is also undisputed that Villegas' injuries arose out of his work fulfilling

Nu-Way's contract with ARA.  Therefore, the exclusion applies.  Plaintiff is entitled to a

declaration that it has no duty to defend or indemnify Eire or ARA for Villegas's claim.[9]

## CONCLUSION

Plaintiff's motion for summary judgment and default judgment is GRANTED.  Plaintiff

is entitled to a judgment that the Policies do not require Plaintiff to defend or indemnify any of

the defendants in this action for the claims asserted in the underlying action, *Jose Villegas v. RLF*

*II Bassett, LLC, Ara Construction Corp. and Amazon.com Services, LLC*, filed in the Supreme

Court of the State of New York, Bronx County, under Index Number 817010/2021E, including

third-party claims, cross-claims, and counterclaims in that action.

Eire's motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 65 and 72.

SO ORDERED.

Dated: January 22, 2025
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[9] Plaintiff is also entitled to summary judgment against Villegas and default judgment against the defaulting defendants RLF II Bassett, Amazon.com, and Nu-Way.  Villegas has appeared in this action but has not opposed the motion for summary judgment.  He is not an insured under the Policies and there is no reason Plaintiff would be required to defend or indemnify him.  As to the defaulting defendants, on a motion for default judgment "the Court is required to is required to accept all of the [moving party's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The same reasoning that requires summary judgment against ARA and Eire therefore also requires default judgment against RLF II Bassett, Amazon.com, and Nu-Way.  Even assuming that any of the defaulting defendants were insured under the Policy, they could not receive coverage for the Villegas claim because Villegas was an employee of a contractor of the additional insured ARA.